### WESTERN UNION TELEGRAPH COMPANY *v.* ARANT.

#### Opinion delivered December 14, 1908.

1. TELEGRAPH COMPANY—NEGLIGENCE—MENTAL ANGUISH.—Under Kirby's Digest, § 7947, making telegraph companies "liable in damages for mental anguish or suffering, even in the absence of bodily injury or pecuniary loss, for negligence in receiving, transmitting or delivering messages," a telegraph company is liable for mental anguish caused by its negligence in delivering a message which would have notified a mother in this State that her son was dead and requested that she wire disposition of the body, in consequence of which negligence the body was interred in another State, and the mother suffered a week of anxiety until the body could be exhumed, removed to this State and reinterred. (Page 501.)

2. APPEAL—INVITED ERROR.—Appellant cannot complain of an error of the trial court which it invited by its own instruction. (Page 503.)

Appeal from Hot Spring Circuit Court; *W. H. Evans,* Judge; affirmed.

*George H. Fearons* and *Rose, Hemingway, Cantrell & Loughborough,* for appellant.

There is no sufficient showing here for recovery on the ground of mental anguish. Appellee was deprived of no privilege by reason of the delay, and a speedier transportation of the remains, and burial, would have made no material difference in her emotions. The claim that she was shocked when she saw

that the telegram was dated a day prior to its receipt by her is
too intangible for remuneration in money. And her alleged suf-
fering under the thought that he had been buried before she could
see deceased is not sufficient; it was in fact without foundation,
because she knew her messengers would bring the remains home.
Worry because she did not know how or why her son had died,
nor what he had gone through, would not have been relieved by
prompt delivery of the message, and can not enter into the ele-
ments of mental anguish for which recovery can be had. 83
Ark. 476; 41 S. E. 881; 42 S. W. 549; 44 S. W. 538; 67 S. W.
515; 56 S. W. 1127; *Id.* 744; 47 S. E. 597; 85 S. W. 1171; 12
S. W. 534; 30 S. W. 1105; *Id.* 1107; 56 S. W. 568; 38 S. W. 635;
71 S. W. 584; 84 S. W. 296.

*Jabez M. Smith, A. M. Duffie* and *W. R. Duffie,* for appellee.

The jury were properly instructed in accordance with the
law, as declared by this court, that no recovery can be had for
mental anguish arising from purely imaginary causes, apprehen-
sions or worries having no basis in fact; but, in order to recover
for mental anguish, it is not necessary that the complainant
minutely dissect and analyze each emotion of grief upon the wit-
ness stand. Each case must stand upon its own state of facts,
and in arriving at the elements of damages they must be de-
termined in the light of experience from a common sense con-
struction and application of the facts and circumstances surround-
ing each particular case. 83 Ark. 43. With one exception the
cases cited by appellant are from other States, and were decided
prior to the passage of our mental anguish statute, Kirby's Dig-
est, § 7947. This statute has been upheld in many cases. See
particularly 78 Ark. 549; 85 Ark. 263. That a mother would
suffer genuine pain and anguish on receipt of delayed telegram
under circumstances such as these is a matter of common knowl-
edge.

HILL, C. J. Harry Arant and Burt Coyne were room-
mates, living at Lissie, near Eagle Lake, Texas. Harry Arant
was born and reared at Malvern, Arkansas, where his parents
resided. He died on the 20th of February at 2:15 P. M. Burt
Coyne went to Eagle Lake immediately after Harry's death to
arrange for the body to be sent to the home of his parents, and

discussed the matter fully with the agent of the telegraph company, and sent this telegram to Harry's mother: "Harry died today. Wire disposition of body at once." This was sent at 4:48 p. m. on February 20, 1907. He was told by the operator that it would take about two hours to get an answer, and he called repeatedly thereafter for an answer. None being received, the body of Harry Arant was buried at five-thirty p. m. February 21st, at Lissie, Texas.

The message was received by Mrs. Arant at about the hour of his burial, 5:30 p. m. on February 21st. It was shown that a message from Eagle Lake to Malvern would be relayed three times; and if the message was given precedence, as was usual with death messages, from fifteen to thirty minutes would be good service, while if it took its turn with business messages two hours would be good service. Immediately upon receipt of this message, Mrs. Arant sent this message to Burt Coyne: "Bring body at once; expenses will be paid here." To this a reply was sent: "Message too late; body buried yesterday."

Another son of Mrs. Arant and a friend were sent to Texas to disinter the body and bring it to Malvern for burial. They had to expend $140 for a metallic coffin, which was made necessary by reason of the condition of the body. Had the body been shipped home immediately after death, a coffin suitable for the purpose could have been purchased for $35. The coffin in which he was first buried cost $25. The expenses of the trip for the body were shown in the evidence. The body was buried at Malvern, and a funeral held at this burial. The body was too decomposed to permit the casket to be opened after its arrival at Malvern.

This suit was instituted by Mrs. Arant against the telegraph company seeking to recover for mental anguish and the expenses incident to the interment and disinterment due to the negligent delay in the delivery of the telegram. She recovered a verdict for $400, and the telegram company has appealed.

It is insisted that there is no element of mental anguish shown. Mrs. Arant was questioned as to her feeling on the subject. Without going into a discussion of whether this real but intangible element, mental anguish, can be described in testimony or dissected on cross-examination, it is sufficient to say

that the court is of opinion that there is a substantial basis for mental anguish shown in the facts of this case.

In *Western Union Telegraph Company* v. *Blackmer,* 82 Ark. 526, a recovery was sustained under this statute where the negligence of the company prevented a daughter being with her mother at her death.

In *Western Union Telegraph Company* v. *Weniski,* 84 Ark. 457, there was an action against the company for mental anguish growing out of its negligence in the delivery of a message telling of the death of a brother, and the court said: "Her only deprivation on account of the failure to deliver the telegram was the melancholy pleasure of attending the funeral of her deceased brother and the satisfaction of having fully discharged her duty to the dead. It may be that such a bereavement produced mental injury, distinct from that resulting naturally from the death of a brother or other loved one, which would justify the assessment of some pecuniary compensation, but we feel sure that a far less sum than that assessed by the jury in this case would, under the circumstances shown by the evidence, be sufficient to afford full compensation to the plaintiff for her injury in this respect."

In *Western Union Telegraph Company* v. *Hollingsworth,* 83 Ark. 39, it was said: "The Legislature has put in force mental anguish as elements of damage, and the court must take the construction which common sense and experience teaches should be given to the terms describing such elements of damage. That any one would suffer as keen and real mental anguish for failing to hear from the sick bed of a dangerously ill member of the family is too apparent to need any explanation; and no refinement or distinction can take away the reality of such suffering."

There can be no distinction in principle between those cases and this. The mother was deprived of the privilege of seeing the body of her son before its burial, and of paying the usual and customary rites to the dead in the usual and customary way. She was not given an opportunity to attend the interment of his body in Texas. It was contrary to her wishes that he should be interred there, but her wish was that he should be buried in the community where he was reared. It is true that after a week of anxiety over the unfortunate situation produced by the failure

to deliver the telegram this object was finally accomplished. This is but another phase of the mental anguish, and is no less real than in the cases mentioned, and in other cases which may be found discussed in the opinions in those cases.

It may be questioned whether the telegram gave such notice to the company on its face of the additional expense incurred by the interment in Texas and sending the body to Arkansas for a second interment as would justify recovery for this expense. But evidence was adduced upon this point, and the telegraph company asked the court to give this instruction, which was done: "If you find for the plaintiff, you will assess her damages for pecuniary loss at the amount she expended for the burial of the remains at Eagle Lake, Texas, and the amount she expended for exhuming the remains for shipment to Malvern, less any items of expense that she would have had to pay if the telegram had been promptly delivered."

Under this instruction the jury were authorized to find a certain amount in her favor from the evidence; and the appellant can not complain of the recovery on this account, for it was invited by this instruction. The amount of pecuniary loss, deducted from the face of the verdict, leaves the recovery for the mental anguish element less than $300, and it can not be said that it is excessive.

Other questions have been presented and discussed by the appellant, but the court is unable to find wherein there has been error committed to the prejudice of the appellant. In fact, some of the instructions given are more favorable to it than the law authorizes; and there is evidence sufficient to support the verdict.

Judgment is affirmed.

ON REHEARING.

Opinion delivered January 11, 1909.

HILL, C. J. I. Attention is called to the fact that the court in the 8th instruction withdrew from the jury the consideration of the evidence showing that the mother was deprived of seeing her son's body on its arrival at Malvern, and it is insisted that this evidence could not be considered. It is true that it was not before the jury, and its verdict could not be tested by it; but this evidence was in the case, and the court considered it when weigh-

ing appellant's contention that there was no element of mental anguish shown. The court was of opinion that it, and the other matters mentioned in the opinion, were elements within the statute. It was pointed out in the opinion that some of the instructions given were more favorable to appellant than the law authorized.

II. Appellant says that the court does not mention in the opinion what appeared to it an important point, that there was no testimony introduced showing what Burt Coyne would have done had he been instructed by the plaintiff to ship the remains to Malvern. Coyne was the friend and roommate of Harry Arant, and wired his mother of his death; and in the telegram said, "Wire disposition of body at once." Coyne testified that when he sent this telegram, "I told the agent that we wanted to notify Mrs. Arant that her son Harry was dead, and that we desired to know what disposition she wanted to make of the body." Coyne waited the two hours he was told it would take for an answer to come, and then called at the office for it and, failing to get it, went back for it every half-hour until after midnight, and then arranged for the answer to be telephoned to him. The reply that was sent to his message when it was received, and before it was known that it had been delayed, was, "Bring body at once; expenses will be paid here." To this a reply was sent that it was too late, as the body was buried. The court, at the instance of the appellant, instructed the jury that the plaintiff must show that Coyne would have responded to this message and shipped the remains before she could recover.

Considering the close friendship the evidence showed existed between Coyne and Harry, and Coyne's prompt action in going to the nearest telegraph station and wiring news of Harry's death and asking disposition of his remains, and his explanation to the agent, his conduct in repeatedly endeavoring for twenty-four hours before he buried his friend to get a reply from his telegram, and the nature of the reply, the jury was not without evidence to sustain its finding on this issue. This matter was not overlooked, as thought by counsel, but was considered a question of fact submitted to the jury under instructions given at the instance of appellant, and, the evidence being considered sufficient, no profit was seen in a discussion of it. There was no error

to the prejudice of appellant in the trial, and the motion is overruled.